UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| ADAM GARY MARGLON, SR., <br><br> Plaintiffs, <br><br> vs. <br><br> CHILD PROTECTION SERVICES, LYNN VALENTI, in her individual and official capacity; VIRGENA WIESELER, in her individual and official capacity; BRENDA TIDBALL-ZELTINGER, in her individual and official capacity; BRIDGETTE DESTIGTEV, in her individual and official capacity; JACKIE SMIDT, in her individual and official capacity; JOLEEN THOMPSON, in her individual and official capacity; MOLLY BECK, in her individual and official capacity; and AMY MILLER, in her individual and official capacity, <br><br> Defendants. | **4:18-cv-04156-LLP** <br><br><br> **MEMORANDUM OPINION AND ORDER RESCREENING AND GRANTING LEAVE TO AMEND** |

Plaintiff, Adam Gary Marglon, Sr. ("Marglon") is proceeding *in forma pauperis* and on behalf of his four minor children and has filed an Amended Complaint in this case. Doc. 6. As described more fully below, in screening the Amended Complaint as the Court is obligated to do pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court concludes that the Amended Complaint has failed to state a claim upon which relief may be granted. The Court grants Marglon leave to amend.

## BACKGROUND

In his Amended Complaint, Marglon alleges that on August 16, 2018, his children were taken from his apartment in Sioux Falls, South Dakota, and were exposed to a dangerous environment by defendant Child Protection Services ("CPS"), a division of the South Dakota Department of Social Services ("DSS"), after they were placed into foster care. In the foster home, one of his children was mauled by the foster family's dog while unsupervised.

Marglon alleges that an off-site property manager, Amy Miller with Charisma Properties (also a defendant in this matter), whom Marglon alleges he had never met, called CPS. Marglon alleges that when CPS agents entered his home and removed his children, they had no warrant or cause to enter his home and that he did not want CPS there.

As the Court construes Marglon's Amended Complaint, after his children were removed from the home, a Court ordered that the children remain in foster care. Marglon's visitation with his children takes place at the Family Visitation Center in Sioux Falls. Marglon alleges that defendant Joleen Thompson and staff at the Family Visitation Center told Marglon what he may and may not say in front of his children. He alleges that at the Family Visitation Center, he must proceed through a metal detector, is searched and given a breathalyzer. Marglon states that his oldest son wants to be an attorney and alleged that he was told not to talk about the law, and that staff at the Family Visitation Center did not allow a phone conversation to continue between his children and his sister.

Marglon seeks money damages for violations of his Constitutional rights under 42 U.S.C. § 1983. Marglon alleges the following claims: (1) CPS violated his Fourth Amendment rights with their unreasonable search of his home and seizure of his children; (2) CPS violated his Fourteenth Amendment rights to be a father to his children; (3) Joleen Thompson with Family Visitation Center violated his First and Fourth Amendment rights by telling him what to say around his children and by entering the room on visitation day to silence him; (4) defendants Smidt and DeStigtev used his daughter's statements against him in court knowing of her previous mental conditions; (5) CPS's investigation was unfounded and ran off false testimony. The defendants in this action are CPS and various individual defendants who Marglon alleges he is suing in their official as well as individual capacities.

## STANDARD OF REVIEW

Congress has directed this Court under 28 U.S.C. § 1915(e)(2)(B) to review and screen claims in a complaint being filed *in forma pauperis* to determine if they are: (1) frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek monetary relief against a defendant who has immunity. *See* 28 U.S.C. § 1915(e)(2)(B).

A complaint states a claim upon which relief may be granted if it contains sufficient factual matter, accepted at true to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). A plaintiff must demonstrate a plausible claim for relief, that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)). "Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id. (citation omitted).*

A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). A reviewing court has the duty to examine a *pro se* complaint "to determine if the allegations provide for relief on any possible theory." *Williams v. Willits*, 853 F.2d 586, 588 (8th Cir. 1988). However, a court is not required to supply additional facts for a *pro se* plaintiff, nor construct a legal theory that assumes facts which have not been pleaded. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). The Court must also weigh all factual allegations in favor of the plaintiff, unless the facts alleged are clearly baseless. *Denton v. Hernandez*, 504 U.S. 25, 32 (1992).

## DISCUSSION

### I.     Children's Claims

Marglon's minor children are also named as plaintiffs in this action. Marglon is not an attorney and does not have standing to litigate *pro se* the constitutional rights of his children. *See Steele v. City of Bemidji*, 257 F.3d 902, 905 (8th Cir. 2001) (citation omitted) (stating that a non-lawyer has no right to represent another entity in federal court): *see also Lattanzio v. COMTA*, 481 F.3d 137, 139 (2nd Cir. 2007) (noting that 28 U.S.C. § 1654 "does not permit unlicensed laymen to represent anyone else other than themselves"); *see also See Southerland v. City of N.Y.*, 680 F.3d 127, 143 (2d Cir. 2012) (stating that the right to assert a Fourth

Amendment unlawful child-seizure claim belongs to the child, the person being "seized). Accordingly, the Court will construe Marglon's Amended Complaint as asserting only claims on his behalf.

## II.    Official Capacity Claims

The named defendants in this action are Child Protection Services ("CPS"), a division of the South Dakota Department of Social Services; Lynn Valenti, the Secretary of the South Dakota Department of Social Services; Virginia Wieseler, the Division Director of the Division of Child Protective Services; Brenda Tidball-Zeltinger, the Deputy Secretary of the Department of Social Services; Bridgette DeStigtev, a social worker and case manager of the Marglon children's case at the South Dakota Department of Social Services; Jackie Smidt, a social worker for the South Dakota Department of Social Services; Molly Beck, president of the Board of Directors for the Family Visitation Center; Joleen Thompson, Director of Services for the Family Visitation Center; and Amy Miller, president of Charisma Property Management. These named defendants are sued in both their official and individual capacities. The Supreme Court has stated, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

A suit by private parties seeking to impose a liability that must be paid from public funds in the state treasury is barred by the Eleventh Amendment. *See Hadley v. N. Ark. Cmty. Tech. College*, 76 F.3d 1437, 1438 (8th Cir. 1996). Thus, "[u]nless a State has waived its Eleventh Amendment immunity or Congress has overridden it," neither a State nor its officials acting in their official capacities can be sued directly for damages. *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *Murphy v. State of Ark.*, 127 F.3d 750, 754 (8th Cir. 1997). Eleventh Amendment immunity also extends to state agencies. *See Hadley*, 76 F.3d at 1438. Moreover, a state agency and its officials acting in their official capacities are not considered "persons" who may be sued for money damages under § 1983. *See Will*, 481 U.S. at 71.

Congress did not abrogate the states' immunity by enacting 42 U.S.C. § 1983. *Will*, 491 U.S. at 65-66. Nor has the State of South Dakota waived its Eleventh Amendment immunity from § 1983 claims or consented to suit. *See Walker v. Barnett*, Civ. No. 20-4059, 2020 WL 2543171, at *3 (D.S.D. May 19, 2020) (dismissing claim for money damages under §

4

1915(e)(2)(B) against State of South Dakota on Eleventh immunity grounds); *accord Walker v. Krebs*, Civ. No. 18-5010, 2018 WL 2122862, at *2 (D.S.D. May 8, 2018).

It appears to the Court that Marglon's Fourth Amendment and substantive due process claim arising under the Fourteenth Amendment are official capacity claims.  Marglon's allegations involve actions taken by CPS, one of the named defendants in this matter.  Specifically, Marglon alleges that CPS violated his Fourth Amendment rights when they unlawfully entered and searched his home without a warrant, his consent, or cause, and removed his children from his custody.  Marglon also alleges the CPS has violated his Fourteenth Amendment right to be a father to his children.

Marglon has not sued any known or unknown CPS agents in their individual capacities for the alleged unlawful entry and search of his home in violation of his Fourth Amendment rights.  The allegations against Ms. Smidt and Ms. DeStigtev—employees of the South Dakota Department of Social Services who were sued in their individual capacities—do not involve the alleged unlawful entry and search of Marglon's home, but regard their testimony in child custody proceedings in state court.

Marglon's claims against CPS for the alleged violation of his Fourth Amendment and substantive due process rights are barred by Eleventh Amendment immunity.  Marglon has also sued various individuals in their official capacities who are employed by CPS and the South Dakota Department of Social Services.  Any section § 1983 official capacity damages claims alleged against these individuals are also barred by Eleventh Amendment immunity.

That being said, the allegations in Marglon's complaint suggest he may have a claim against known or unknown CPS agents in their individual capacities for their alleged unlawful entry and search or his home without a warrant, cause, or his consent.  The Eighth Circuit Court of Appeals stated in *Riehm v. Engelking*, that "the Fourth Amendment requires that the protective seizure of children occur pursuant to a court order, or, in the absence of a court order, pursuant to probable cause or exigent circumstances."  538 F.3d 952, 965 (8th Cir. 2008).  Although the Eighth Circuit Court of Appeals has not specifically spoken on this issue, several circuits have concluded that a court must also analyze whether the state agents' entry and search of the home comports with the Fourth Amendment.  *See United States v. Tepiew*, 859 F.3d 452, 458 (7th Cir. 2017) ("[B]ased upon the totality of the circumstances faced by the officers at the

time they entered the home without the warrant, it was objectively reasonable to believe that their entry was necessary to render emergency aid to [the minor child].”); *Andrews v. Hickman Cty., Tenn.*, 700 F.3d 845, 859 (6th Cir. 2012) (“Given the presumption that state actors are governed by the Fourth Amendment and the sanctity of the home under the Fourth Amendment, we agree that a social worker, like other state officers, is governed by the Fourth Amendment’s warrant requirement.”); *Gates v. Texas Dept. of Protective and Regulatory Servs.*, 537 F.3d 404, 424 (5th Cir. 2008) (“[B]ecause the visit [by Department of Protective Services agents] to the Gateses’ home to investigate possible child abuse was not separate from general law enforcement, the special needs doctrine cannot be used to justify the warrantless entry. Therefore, the typical Fourth Amendment standards of a court order, consent, or exigent circumstances apply. . . .”); *Rogers v. Cty. of San Joaquin*, 487 F.3d 1288, 1294 (9th Cir. 2007) (“Officials, including social workers, who remove a child from its home without a warrant must have reasonable cause to believe that the child is likely to experience serious bodily harm in the time that it would be required to obtain a warrant.”); *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230 (10th Cir. 2003) (“We find no special need that renders the warrant requirement impracticable when social workers *enter a home* to remove a child, absent exigent circumstances.”) (emphasis in original); *Tenanbaum v. Williams*, 193 F.3d 581, 605-06 (2d Cir. 1999) (noting that in the context of a seizure of a child by the State during an abuse investigation, a court order is the equivalent of a warrant and stating that “[W]e refrain from deciding categorically, as did the district court, that the removal of a child of whom abuse is suspected is not a “special needs” situation.  There may be circumstances in which the law of warrant and probable cause established in the criminal setting does not work effectively in the child removal or children examination context[,] [however] [t]his is not the case.”)’ *Good v. Dauphin Cty. Social Servs. for Children and Youth*, 891 F.2d 1087, 1094-95 (3d Cir. 1989) (concluding that social services caseworker and police officer were entitled to qualified immunity for warrantless search of home only if the mother consented to the search or the minor child was “in imminent danger of serious bodily injury and that their intrusions were reasonably necessary to avert that injury.”);  *O’Donnell v. Brown*, 335 F.Supp.2d 787, 801-02 (W.D. Mich. 2004) (concluding that even though a state statute and court order authorized seizure of the children without the order of the court in the circumstances they describe, these authorities do not give the police, social workers, or anyone else the authority to enter a home to effect the

seizure and that "[t]he entry itself must satisfy the Fourth Amendment, which generally requires a warrant."); *People United for Children, Inc. v. City of N.Y.*, 108 F.Supp.2d 275, 300 (S.D.N.Y. 2000) ("Although the *Tenenbaum* court was addressing a child's Fourth Amendment rights to be free from an unreasonable seizure, its analysis and reasoning apply with equal weight to parents' and guardians' assertion of Fourth Amendment rights. Absent exigent circumstances, such as to protect a child from imminent danger of abuse, and neglect, officers may not enter the home without a warrant or consent."); *Walker v. King Cty.*, 630 F.Supp.2d 1285, 1291 (W.D. Wash. 2009) (finding that no reasonable officer could conclude that warrantless, non-consensual entry into the home was necessary to assist persons who are "seriously injured or imminently threatened with such injury. . . .") (quoting *Brigham City v. Stuart*, 547 US. 398, 400 (2006)); *Coats v. Powell*, 650 F.Supp.2d 932, 939 (W.D. Mo. Oct. 21, 2009), *aff'd*, 639 F.3d 471 (8th Cir. 2011) ("The question here is whether the police could reasonably believe that there was a threat of violence that would soon occur at the Coates house that required them to remain. Or, by analogy, was there a threat to the Coates children that would soon occur that required their continued presence [after they were ordered to leave].").

The allegations in Marglon's complaint suggest he may have a claim against known or unknown CPS agents for the alleged unlawful entry and search without a warrant, cause, or his consent, but that he has failed to state such a claim properly. Accordingly, the Court will grant Marglon leave to amend his complaint a third time.

### III.    Individual Capacity Claims

#### A. Alleged Violation of First and Fourth Amendment Rights by Joleen Thompson at Family Visitation Center

Marglon alleges that Joleen Thompson with the Family Visitation Center violated his First and Fourth Amendment rights because she restricted what Marglon could and could not say in front of his children. Marglon alleges that visitation took place with his children at the Family Visitation Center. At the Family Visitation Center, Marglon states that he was put through metal detectors, searched for weapons and given a breathalyzer prior to his visitation. Marglon alleges that he was told not to talk about "law," even though his oldest son wanted to be an attorney and that on several occasions, staff at the Family Visitation Center entered the room "to silence [Marglon] as [he] proceeded peaceably to assemble with [his] children," and that staff "busted in the room and put a stop to [his] sister on speaker phone talking with the children."

At the outset, the Court notes that many of Marglon's First Amendment claims are directed at Family Visitation Center staff rather than Jolene Thompson individually. Ms. Thompson may not incur vicarious liability for the actions taken by persons she supervises. *See Ashcrof v. Iqbal*, 556 U.S. 662, 675-76 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Parrish v. Bell*, 594 F.3d 993, 1001 (8th Cir. 2010) ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct.") (quoting *Iqbal*, 556 U.S. at 677).

In order to state a claim under section 1983, Marglon must allege facts establishing that the defendant, Joleen Thompson, was acting under color of state law. "To ascertain whether there is state action in a case, we examine the record to determine whether the conduct at issues is fairly attributable to the state." *Wickersham v. City of Columbia,* 481 F.3d 591, 597 (8th Cir. 2007) (internal quotations and citation omitted). In making this determination, a court is guided by two additional queries: "whether the claimed deprivation 'resulted from the exercise of a right or privilege having its source in state authority' and whether the party engaging in the deprivation 'may be appropriately characterized as [a] state actor[ ].'" *Id.* (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982)).

As stated by the Eighth Circuit Court of Appeals in *Wickersham v. City of Columbia*,

The Supreme Court has recognized a number of circumstances in which a private party may be characterized as a state actor, such as where the state has delegated to a private party a power "traditionally exclusively reserved to the State," where a private actor is a "willful participant in joint activity with the State or its agent," and where there is "pervasive entwinement" between the private entity and the state. These particular circumstances are merely examples and not intended to be exclusive.

. . .

The one unyielding requirement is that there be a 'close nexus' not merely between the state and the private party, but between the state and the alleged deprivation itself. No such nexus exists where a private party acts with the mere approval or acquiescence of the state, but a private entity may be considered a state actor if it "has acted together with or has obtained significant aid from state officials" in furtherance of the challenged action.

481 F.3d at 597.

The Court concludes that Ms. Thompson is not a state actor by virtue of exercising power "traditionally exclusively reserved to the State." In determining whether a function is "traditionally exclusively reserved to the State," the Supreme Court has stated that:

> It is not enough that the federal, state, or local government exercised the function in the past, or still does. And it is not enough that the function serves the public good or the public interest in some way. Rather, to qualify as a traditional, exclusive public function within the meaning of our state-action precedents, the government must have traditionally *and* exclusively performed the function.
>
> The Court has stressed that "very few" functions fall into that category. Under the Court's cases, those functions include, for example, running elections and operating a company town. The Court has ruled that a variety of functions do not fall into that category, including, for example: running sports associations and leagues, administering insurance payments, operating nursing homes, providing special education, representing indigent criminal defendants, resolving private disputes, and supplying electricity.

*Manhattan Cmty. Access Corp. v. Halleck*, 139 S.Ct. 1921, 1928-29 (2019). In the present case, the Court does not find, nor is there any caselaw supporting that supervised family visitation is a traditional, exclusive public function.

In addition, the Court finds that Marglon has failed to allege any facts that Ms. Thompson "acted together with or has obtained significant aid from state officials" in furtherance of the challenged action." *See Wickersham*, 481 F.3d at 597; *Mershon v. Beasley*, 994 F.2d 449, 451 (8th Cir. 1993) ("In construing that test in terms of allegations necessary to survive a motion to dismiss, [the Eighth Circuit] has held that a plaintiff seeking to hold a private party liable under § 1983 must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor" to violate the plaintiff's civil rights.). Accordingly, Marglon's § 1983 claims alleged against Ms. Thompson are dismissed for failure to state a claim upon which relief may be granted.

**B. Claims regarding Individual Defendants Child Abuse Investigation and False Testimony**

Marglon alleges that defendants Bridgette DeStigtev and Jackie Smidt, Family Services Specialists with CPS, used his daughter's testimony against him in court knowing of her previous mental conditions and that the CPS investigation was unfounded and "ran off false

testimony." These claims are dismissed. Ms. DeStigtev and Ms. Smidt are absolutely immune from their participation in state court proceeding that led Marglon's children being placed in foster care. *See Thomason v. SCAN Volunteer Servs., Inc.*, 85 F.3d 1365 (8th Cir. 1996). To the extent that Ms. DeStigtev and Ms. Smidt are being sued for any allegedly false testimony in their roles as witnesses before the state court, the doctrine of absolute witness immunity applies. *Id.* (citing *Manzano v. South Dakota Dept. of Social Services*, 60 F.3d 505 (8th Cir. 1995) (absolute immunity applied to state officials who testified in support of family court's temporary protective order restricting the plaintiff's unsupervised visitation with his daughter)).

### C. Claim against Amy Miller

Marglon alleges that Amy Miller, an off-site property manager with Charisma Property Management made libelous statements to CPS during their investigation. Because Marglon fails to allege that Ms. Miller acted under color of state law in depriving him of federal right, his claim against her is dismissed for failure to state a claim. *See* 42 U.S.C. § 1983.

### D. Defendants Brenda Tidball-Zelfinger and Molly Beck

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which its rests,'" *Twombly*, 550 U.S. at 555 (quoting Conley *v. Gibson*, 355 U.S. 41, 47 (1957)).

As the Court noted above the Marglon's official capacity claims against Ms. Tidball-Zelfinger and Ms. Beck are barred by Eleventh Amendment immunity. The Court finds that the Complaint is completely devoid of any allegations taken by Ms. Tidball-Zelfinger or Ms. Beck in their individual capacities. The Complaint does not give these defendants fair notice of Marglon's claims against them in their individual capacities and thus does not meet the pleading standard of Rule 8(a)(2). In addition, Marglon lacks standing to bring his claims against these defendants in their individual capacities because he has failed to allege that he suffered an injury in fact that can be fairly traceable to either of them. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180-81 (2000) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

## I.      Leave to Amend

For the foregoing reasons, the Court concludes that Marglon has failed to state a claim in his Complaint.  However, his allegations suggest that he may have a cognizable claim Fourth Amendment claim based upon the alleged unlawful entry and search of his home; he has merely failed to state it properly.  Therefore, the Court grants Marglon leave to amend his Complaint.

Accordingly, it is hereby ORDERED that the Court will provide Marglon thirty (30) calendar days from the date of this order to file his amended complaint, or his case will be dismissed without prejudice.

Dated this 18th day of August, 2020.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK

11